| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>Law Offices of Andy Winchell, P.C.<br>100 Connell Drive, Suite 2300<br>Berkeley Heights, New Jersey 07922<br>Telephone No. (973) 457-4710<br>andy@winchlaw.com<br>By: Andy Winchell [AW-6590]]<br><br>Attorney for the Plaintiff | |
| David and Joyce Estey<br><br>                    Plaintiff<br><br>        vs.<br><br>Ditech Financial, LLC<br><br>                    Defendant | Case No: |

**COMPLAINT FOR VIOLATIONS OF THE
REAL ESTATE SETTLEMENT PROCEDURES
ACT AND REGULATION X; FOR VIOLATIONS OF THE NEW JERSEY
CONSUMER FRAUD ACT; FOR VIOLATIONS OF THE FAIR DEBT
COLLECTION PRACTICES ACT; AND FOR BREACH OF CONTRACT**

**PRELIMINARY STATEMENT**

1. This is an action brought by the Plaintiff that seeks redress for the failure of the Defendant to consummate a loan modification agreement that the Defendant offered, the Plaintiff accepted, and with which the Plaintiff fully complied.

2. The Defendant is a mortgage servicer that is bound by the Real Estate Settlement Procedures Act 12 U.S.C. § 2601 et seq. ("RESPA") and Regulation X, 12 C.F.R. § 1024.36.

3. The Plaintiff submitted a loss mitigation application to the Defendant and the Defendant offered the Plaintiff a loan modification that the Plaintiff accepted in

accordance with the terms dictated by the Defendant. Most specifically, the Defendant required the Plaintiff to execute an agreement that the Defendant provided the Plaintiff and return it to the Defendant. The Plaintiff did so. But the Defendant falsely and fraudulently maintained that it never received the executed agreement. When the Plaintiff informed the Defendant of its error, the Defendant failed to conduct a reasonable investigation into the error.

4. This is also an action pursuant to the New Jersey Consumer Fraud Act (the "NJCFA") for the Defendant's unlawful acts in falsely and fraudulently stating that the Plaintiff had not executed and returned the documents that Defendant had required to consummate the loan modification.

5. This is also an action pursuant to the Fair Debt Collection Practices Act (the "FDCPA") for the Defendant's unlawful acts in falsely stating to the Plaintiff that the Defendant did not receive an executed loan modification agreement from the Plaintiff.

6. Finally, this is also a breach of contract action for the Defendant's breach of the contract the Defendant offered and the Plaintiff accepted.

## JURISDICTION

7. Jurisdiction over this matter is provided pursuant to Section 2601 et seq. of Title 12 of the United States Code. Thus, federal subject matter jurisdiction is properly founded upon Section 1331 of Title 28 of the United States Code.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) of the United States Code because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district and because Defendant regularly transacts business within this federal district by servicing mortgage loans secured by property in this district and attempting to collect mortgage loan and other debts from consumers who reside in this district.

9. This case is brought in compliance with the applicable statutes of limitations.

## PARTIES

10. The Plaintiff is a married couple who lives in Oak Ridge, New Jersey.

11. For all purposes relevant to this action, the Plaintiff is a "consumer" and a "borrower" according to the relevant statutes.

12. On information and belief, the Defendant is a corporation with a principal place of business in Fort Washington, Pennsylvania. The Defendant is the mortgage servicer for the Plaintiff's mortgage loan. The Defendant became the mortgage servicer for the Defendant's mortgage loan after it was in default. The Defendant therefore is a debt collector for the purposes of the FDCPA.

## FACTUAL ALLEGATIONS

13. The Plaintiff obtained a mortgage loan (the "Mortgage Loan") from Countrywide Home Loans, Inc. ("Countrywide") on or about October 18, 2005 which is secured by the Plaintiff's home in Oak Ridge, New Jersey.

14. The Mortgage Loan is federally related mortgage loan as defined by 12 U.S.C. § 2602 and 12 C.F.R. § 1024.5(a).

15. On information and belief, Countrywide sold the Plaintiff's Mortgage Loan shortly after originating it.

16. The Defendant currently services the Mortgage Loan on behalf of its owner.

17. The Defendant began servicing the Defendant's Mortgage Loan in 2016, well after the Plaintiff ceased making payments thereon.

18. Thus, the Defendant is a "debt collector" for the purposes of the FDCPA.

19. On or about April 16, 2016, the Plaintiff submitted a complete loan modification application to the Defendant.

20. The Defendant provided the Plaintiff with a temporary loan modification pursuant to which the Plaintiff would obtain a permanent loan modification if the Plaintiff made three consecutive monthly payments of the trial modification.

21. On or about October 5, 2016, the Defendant offered the Plaintiff the permanent loan modification attached hereto as Exhibit A.

22. The enclosure letter in the loan modification offer indicated that it was generated on September 7, 2016 but the shipping label indicated it was generated on October 5, 2016.

23. On October 13 2016, the Plaintiff executed the loan modification documents (the "Permanent Loan Modification Agreement") in accordance with the instructions provided by the Defendant. The Plaintiff returned the Permanent Loan Modification Agreement to the Defendant by overnight mail the same day.

24. On October 18, 2016, the Plaintiff's counsel received a copy of the executed Permanent Loan Modification Agreement from the Defendant.

25. Thereafter, the Defendant refused the Plaintiff's mortgage loan payment made pursuant to the Permanent Loan Modification Agreement that the Defendant offered and the Plaintiff accepted.

26. The Plaintiff contacted the Defendant by telephone and the Defendant's representative indicated that the Defendant had not received the Permanent Loan Modification Agreement.

27. This statement was false; the Defendant had received the signed original of the Defendant's Permanent Loan Modification Agreement on or about October 14, 2016.

28. On February 2, 2017, the Plaintiff transmitted the Notice of Error attached hereto as Exhibit B (the "February Notice of Error") to the Defendant to inform the Defendant that it had failed in its mortgage servicing obligations to the Plaintiff and providing copies of various documents showing that the Defendant had in fact received the executed Permanent Loan Modification Agreement transmitted by the Plaintiff.

29. The Defendant failed to acknowledge the Plaintiff's February Notice of Error within five days as required by Regulation X.

30. The Defendant also failed to respond to and correct the errors identified in the Plaintiff's February Notice of Error within thirty days as required by Regulation X.

31. On April 3, 2017, the Plaintiff transmitted an additional Notice of Error alerting the Defendant to the fact that it failed to respond to the Plaintiff's February Notice of Error (the "April Notice of Error"). The April Notice of Error is attached hereto as Exhibit C.

32. On June 9, 2017, the Defendant finally responded to the Plaintiff's substantive allegations by denying that the Defendant received the executed Permanent Loan Modification Agreement that the Plaintiff transmitted in October 2016 until February 6, 2017 (the "June 9 Correspondence"). The June 9 Correspondence is attached hereto as Exhibit D. This statement is false, as the executed Permanent Loan Modification Agreement the Defendant received on February 6, 2017 was a copy of the executed documents that the Plaintiff's counsel received from the Defendant on October 18, 2016 and forwarded to the Defendant as an exhibit to the February Notice of Error.

33. The Defendant's statement that it did not receive the executed Permanent Loan Modification Agreement until February 6, 2017 is knowingly false.

34. That the Defendant could not determine that it received the executed Permanent Loan Modification Agreement on or about October 14, 2016 shows that the Defendant did not perform a reasonable investigation into its errors.

35. The Defendant also has a pattern and practice of failing to conduct a reasonable investigation into its errors.

36. The Defendant generally has a poor reputation in the industry of mortgage servicing.

37. The Consumer Finance Protection Bureau (the "CFPB") maintains a database of consumer complaints against mortgage servicers.

38. As of the date of this document, there are over 3700 consumer complaints against the Defendant with the tag of "loan modification, collection, foreclosure" within the CFPB database.

39. The Defendant's conduct herein has caused the Plaintiff to occur actual and ascertainable damages, including but not limited to postage costs, mileage, lost productivity, attorney's fees, and increased mortgage loan interest rates.

40. Notably, mortgage loan interest rates are rising and the Defendant's errors are likely to cost the Plaintiff additional interest amounts of mortgage loan interest.

### FIRST CLAIM FOR RELIEF
### (Violation of the Real Estate Settlement
### Procedures Act and Regulation X)

41. The allegations in the foregoing paragraphs of this complaint are realleged and incorporated herein by this reference.

42. The mortgage servicing provisions of Regulation X were implemented by the CFPB pursuant to a grant of congressional authority arising from the 2010 Dodd/Frank Wall Street Reform and Consumer Protection Act.

43. In passing the Dodd/Frank Wall Street Reform and Consumer

Protection Act, Congress recognized an important policy objective in avoiding preventable foreclosures on federally related mortgage loans.

44. RESPA and Regulation X impose on mortgage servicers a duty of due care to the borrowers of federally related mortgage loans.

45. Mortgage servicers "must maintain policies and procedures reasonably designed to meet the objectives identified in 12 CFR 1024.38(b)."

46. Mortgage servicers must have "policies and procedures" that are "reasonably designed to ensure that the servicer can" perform mortgage servicing.

47. Violations of 12 C.F.R. 1024.38 are not directly actionable by borrowers but errors arising from the mortgage servicer's failure to institute appropriate policies are directly actionable.

48. Regulation X (12 C.F.R § 1024.35 (e)) requires that upon receipt of a Notice of Error, the servicer must respond to the notice within thirty days by either:

   a. Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;
   
   or
   
   b. Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the Borrowers right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

49. The Defendant failed to respond appropriately to the Plaintiff's February Notice of Error within the timeframes dictated by Regulation X.

50. The Defendant failed to conduct a reasonable investigation in response thereto to determine whether an error had occurred.

51. The Defendant ignored its obligations under 12 C.F.R. 1024.36, and failed to respond as required to the Plaintiff's February Notice of Error.

52. The Defendant also failed to respond appropriately to the Plaintiff's April Notice of Error.

53. The Defendant failed to conduct a reasonable investigation in response thereto to determine whether an error had occurred.

54. The Defendant ignored its obligations under 12 C.F.R. 1024.36, and failed to respond as required to the Plaintiff's April Notice of Error.

55. As a servicer of a federally related mortgage loan, the Defendant was obligated to comply with Regulation X. The Defendant however repeatedly failed to do so in connection with Plaintiff's efforts to invoke the RESPA/Regulation X error resolution procedures.

56. Pursuant to 12 C.F.R. §1024.41(a) and 12 U.S.C.§ 2605(f), borrowers are expressly authorized to bring a civil action for violations of the Regulation X loss mitigation procedures. Similarly, 12 U.S.C.§ 2605(f), also provides a private right of action for a borrower when a servicer fails to comply with the error resolution procedures.

57. As a result of the Defendant's repeated violations of Regulation X's express requirements, the Plaintiff has incurred actual damages, including but not limited to decreased productivity in work, mileage, postage, attorney's fees, and increased mortgage loan interest costs.

58. The Defendant's failure to comply with obligations under RESPA and Regulation X are not isolated incidents but rather represent a pattern or practice of non-

compliance with RESPA. The Defendant's pattern or practice of non-compliance with RESPA is due to systemic deficiencies which arise from the Defendant's failure to develop policies and procedures to comply with RESPA/Regulation X, to employ qualified personnel, to appropriately train, manage, and supervising its servicing employees, and a general failure to adequately invest in servicing infrastructure. The Defendants' omissions are the consequence of decisions that the Defendant has made in order to enhance the Defendants' own profits at the expense of the borrowers whose loans the Defendant services. Accordingly, the Plaintiff is entitled to an award of statutory damages, as actual damages, attorney's fees, and costs of suit.

## SECOND CLAIM FOR RELIEF
### (Violation of the New Jersey Consumer Fraud Act)

59. The allegations in the foregoing paragraphs of this complaint are realleged and incorporated herein by this reference.

60. The New Jersey Consumer Fraud Act bans "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid."

61. The definitions of "advertising" and "merchandise" have been interpreted to include mortgage loans and consumer credit.

62. The Defendant engaged in fraudulent commercial practices, deceptive commercial practices, unconscionable commercial practices, false promises, false pretense and/or misrepresentations with respect to the subject Mortgage Loan.

63. Alternatively, or in addition, the Defendant engaged in facts of omission, including but not limited to knowing concealment, suppression and omissions of material facts in connection with the subject mortgage loan.

64. Specifically, these violations include but are not limited to falsely informing the Plaintiff that the Defendant had not received an executed copy of the Permanent Loan Modification Agreement prior to February 6, 2017.

65. This unlawful conduct has caused Plaintiff to incur ascertainable loss which includes but is not limited to loss of productivity, mileage, postage, attorney's fees, and increased mortgage loan interest.

66. As a result of the Defendant's unlawful conduct the Plaintiff is entitled to actual damages trebled, attorney's fees, and costs of suit.

## THIRD CLAIM FOR RELIEF
### (Violation of the Fair Debt Collection Practices Act)

67. The allegations in the preceding paragraphs are realleged and incorporated herein by this reference.

68. The foregoing acts and omissions by the Defendant constitute violations of the FDCPA.

69. Specifically and without limitation, the Defendant violated 15 U.S.C. § 1692e by making the false representation that it never received the executed copy of the Permanent Loan Modification Agreement prior to February 6, 2017.

70. As a result of the Defendant's violations of the FDCPA, the Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

71. The allegations in the preceding paragraphs are realleged and incorporated herein by this reference.

72. The Permanent Loan Modification Agreement constitutes a binding contract between the Plaintiff and Defendant.

73. The Defendant breached such contract by refusing performance by the Plaintiff.

74. The Defendant is entitled to an award of expectation damages and equitable relief in the form of a new mortgage loan in compensation for the Defendant's breach.

**WHEREFORE,** the Plaintiff having set forth claims for relief against the Defendant respectfully prays of the Court as follows:

    a. For a declaratory judgment that the Defendant's actions as described herein violate RESPA and Regulation X;

    b. For a declaratory judgment that the Defendant's actions as described herein violate the NJCFA;

    c. For a declaratory judgment that the Defendant's actions as described herein violate the FDCPA;

    d. For a declaratory judgment that the Defendant's actions as described herein constitute a breach of contract;

    e. That the Plaintiff be awarded and recover actual, trebled, statutory and punitive damages in an amount to be determined by this Court;

      f.      That the Plaintiff have and recover reasonable legal fees in an amount to be determined by this Court;

      g.      That the Plaintiff recover all reasonable costs and expenses in this case in an amount to be determined by this Court;

      h.      That the Plaintiff have such other and further relief as to the Court may seem just and proper.

Dated this the 27th day of September, 2017.

/s/ Andy Winchell
Law Offices of Andy Winchell
100 Connell Drive, Suite 2300
Berkeley Heights, New Jersey 07922
973-457-4710
andy@winchlaw.com
Attorney for the Plaintiff